# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| MADISON COUNTY COMMUNICATIONS DISTRICT, | ) |
| Plaintiff, | ) |
| vs. | ) CV 12-J-1768-NE |
| CENTURYLINK, INC., et al., | ) |
| Defendants. | ) |

## Memorandum Opinion

Pending before the court is defendant CenturyTel Service Group, LLC's (CSG) motion to dismiss and brief in support (doc. 32), plaintiff Madison County Communications District's (MCCD) opposition thereto (doc. 51), and defendant's reply (doc. 54). Having considered the motion, response, reply, and all other pleadings filed to date, the court finds as follows:

## Factual Background[1]

Alabama enacted the Alabama Emergency Telephone Services Act ("ETSA") of 1984 to establish Emergency Communications Districts (ECD) and local emergency telephone service. *See* Ala. Code §§ 11-98-5, 11-98-5.1. Plaintiff, Madison County Communications District, is an ECD under the ETSA. Amended Complaint (doc. 24) ¶ 1. The ETSA provides funding for ECDs by assessing a charge

---

[1] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," therefore, the facts presented here, unless otherwise noted, are taken from the Amended Complaint (doc. 24). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

on telephone services. *See* Ala. Code § 11-98-5.1(c). Plaintiff brought this suit on behalf of itself and similarly situated state and local entities that collect taxes or fees for 911 services. (*Id.*) ¶ 5.

CenturyTel Service Group, LLC ("CSG") is a wholly-owned subsidiary of CenturyLink, Inc (CenturyLink). (*Id.*) ¶ 9. CSG is organized under the laws of Louisiana with its principal place of business in Louisiana. (*Id.*) CSG is a CenturyLink "service company," meaning that it provides management-type services (such as accounting and billing) to other subsidiaries of CenturyLink, including CenturyLink subsidiaries that provide local telephone exchange service in Madison County, Alabama. (*Id.*) In addition, CSG manages and controls the billing, collection and remittance of 911 Charges on behalf of the CenturyLink subsidiaries that provide local telephone exchange service in other states in which CenturyLink does business. (*Id.*)

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the court must "accept the allegations of the complaint as true and construe them 'in the light most favorable to the plaintiff.'" *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir. 2004) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)). A motion to dismiss is granted "only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.'" *Sonyika*, 394 F.3d at 1338 (citing *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004)); *See also Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint"); *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994) (same).

While the complaint need not contain "detailed factual allegations," *Twombly*, 550 U.S. at 555, it does have to set forth "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

To satisfy the pleading requirements of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing an entitlement to relief, and must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted).

## Legal Analysis

### I.  CSG is not a "Service Supplier" under the ETSA

The ETSA imposes a duty on "service suppliers" to bill and collect 911 charges from telephone service users and then to remit those 911 charges to the District. See Ala. Code § 11-98-1, et seq.  The ETSA defines a "service supplier" as "[a]ny person providing exchange telephone service to any service user throughout the county or municipality." Ala. Code § 11-98-1(7).  Plaintiff claims that CSG is a "service supplier" because CSG serves a critical role in "providing exchange telephone service" to service users in Madison County.  CSG argues that it does not fit within this definition and, therefore, cannot be liable.

Statutory definitions such as the one found in § 11-98-1 must be scrupulously followed, and courts may not stray from or expand upon those definitions. *Ex parte M.D.C.*, 39 So. 3d 1117, 1121 (Ala. 2009) ("legislative definitions are binding on the court"); *Ex parte Birmingham Bd. of Educ.*, 45 So. 3d 764, 770 (Ala. 2009) (courts must give effect to legislature's defined terms, and may not rewrite statutory definitions through judicial construction); *McWhorter v. State Bd. of Reg. for Prof.*

*Eng.*, 359 So. 2d 769, 773 (Ala. 1978) ("It is well recognized that when the Legislature defines the language it uses, its definition is binding upon the courts, even though this definition does not coincide with the ordinary meaning of the words used."). Additionally, as a statute creating new rights and duties that did not exist in common law, the Alabama 911 statute must be strictly construed. *Golden Gate Nat. Senior Care v. Roser*, 94 So. 3d 365, 369 (Ala. 2012) ("statutory remedies for rights unknown to the common law are to be strictly construed").

The statute clearly imposes a duty to collect 911 service charges on any "person providing exchange telephone service to any service user throughout the county or municipality." Ala. Code §§ 11-98-1 and -5. MCCD specifically alleges that:

> CSG is a CenturyLink "service company," meaning that it provides management-type services (such as accounting and billing) to other subsidiaries of [CenturyLink], including [CenturyLink] subsidiaries that provide local telephone exchange service in Madison County, Alabama. In addition, CSG manages and controls the billing, collection and remittance of 911 Charges on behalf of the [CenturyLink] subsidiaries that provide local telephone exchange service in Madison County, Alabama and throughout most, if not all, of the 37 states in which CenturyLink does business.

Amended Complaint (doc. 24) ¶ 9. The question is whether CSG is a service supplier with a duty to collect MCCD's 911 fees under the Alabama statute. MCCD has not alleged that CSG provides "exchange telephone service to any service user,"

5

however, MCCD has acknowleged CSG as a provider of accounting and billing services. To find that the providing of accounting and billing services is equivalent to providing exchange telephone service would subject any accounting firm, management consultant, or law firm that contracts with a telephone service provider would qualify as a "service supplier" under the Alabama 911 Act. There is no support for such a strained reading of the Alabama statute and the court declines to adopt it. The court, therefore, finds that CSG is not a " person providing exchange telephone service to any service user throughout the county or municipality" under Alabama Code § 11-98-1(7).

## II. The assumed duty doctrine is not applicable

MCCD next asserts the assumed duty (or voluntary undertaking) doctrine, arguing CSG can be held liable if it voluntarily assumed other companies' 911 fee statutory duties. MCCD's reliance on the assumed duty doctrine is misplaced. The assumed duty doctrine comes from Section 324A of the Restatement (Second) of Torts (1965), which Alabama adopted in 1971. *Commercial Union Ins. v. DeShazo*, 845 So. 2d 766, 769 (Ala. 2002) (noting Alabama first adopted Section 324A in *Beasley v. MacDonald Eng.*, 249 So. 2d 844 (1971)). Section 324A is also known as the "Good Samaritan" rule. *Beasley*, 249 So. 2d at 847. The doctrine applies only to tort claims for physical injury or property damage; it does not apply to claims like

MCCD's that seek to recover for purely economic loss. *See Commerical Union*, 845 So. 2d at 769. Physical harm refers to bodily injuries or physical damage to property, and does not include solely financial loss. Restatement (Second) of Torts § 7(3).

### III. There are no grounds for piercing the corporate veil

MCCD argues because CSG provides various contract administrative services to other CenturyLink subsidiaries, CenturyLink and all 271 subsidiaries are operated as a "single business enterprise." MCCD argues because of this "single business enterprise," the Court may disregard the corporate form.

The Alabama Supreme Court has held that there are only three "extraordinary" ways under Alabama law to pierce a corporate veil to hold a parent corporation liable for the acts of its subsidiary: (1) inadequacy of capital; (2) fraudulent purpose in conception or operation of the business; and (3) operation of the corporation as an instrumentality or alter ego. *Messick v. Moring,* 514 So. 2d 892, 894 (Ala. 1987) (setting forth three ways to pierce); *Gilbert v. James Russell Motors,* 812 So. 2d 1269, 1273 (Ala. Ct. App. 2001) (noting the Supreme Court in *Messick* set forth the only three ways to pierce the corporate veil under Alabama law). MCCD has not alleged inadequacy of capital or fraudulent purpose, and therefore must plead facts showing that the two Madison County telephone companies are "mere instrumentalities or alter egos" of CSG. Significantly, MCCD makes no allegation that CSG, CenturyLink, or

any of the subsidiaries ever disregarded the corporate form or failed to observe corporate boundaries in dealings with each other. There are no allegations that any entity failed to maintain its corporate existence, neglected to keep separate corporate and accounting records, or used assets or employees of other entities as their own regardless of corporate boundaries.

The court notes that generally the corporate veil cannot be pierced horizontally between sibling corporations for liability purposes. *See, e.g., Momentive Performance Materials v. AstoCosmos Metallurgical,* 2011 WL 6219531 at *9 (N.D. N.Y. Dec. 3, 2011) (granting motion to dismiss because plaintiff was impermissibly attempting to horizontally pierce between sister corporations); *Minno v. Pro-Fab, Inc.,* 905 N.E.2d 613, 614 (Ohio 2009) ("a plaintiff cannot pierce the veil of one corporation to [impose liability] on its sister corporation"); *SEC v. Hickey,* 322 F.3d 1123, 1128 (9th Cir. 2003) (rejecting horizontal piercing claim because "[o]wnership is a prerequisite to alter ego liability, and not a mere factor or guideline.").

The reason for this rule is simple: "veil-piercing is intended to get at the owners of a corporation." *Momentive,* 2011 WL 6219531 at * 9. Veil piercing is an equitable rule, based on the premise that because the owner of the corporation (whether individual or entity) is the one that benefits from the limited liability of the corporate form, the owner runs the risk of losing that benefit if he misuses or abuses that

corporate form. *Minno,* 905 N.E.2d at 617. Sister corporations do not benefit from the corporate form of their siblings, and therefore are not subject to corporate veil piercing. Without some evidence of ownership interest, the "complete domination and control" element of the alter ego test can never be met. *Id.*

The court finds that MCCD has not made sufficient allegations of inadequacy of capital; fraudulent purpose in conception or operation of the business; and/or operation of the corporation as an instrumentality or alter ego to support piercing the corporate veil of CSG. Additionally, even if MCCD had made such allegations, CSG does not own the entities operating in Alabama and horizontally piercing the corporate veil between sibling corporations for liability purposes is not allowed. MCCD cannot, therefore, state a claim against CSG based on a veil piercing or alter ego theory.

## Conclusion

Plaintiff has failed to demonstrate that CSG is a "service provider" under the Alabama ETSA and therefore cannot state a claim against CSG for failing to collect 911 fees under the ETSA. Plaintiff has also failed to establish a prima facie case for piercing the corporate veil. Defendant's motion is therefore due to be granted.

Having considered the foregoing, the court is of the opinion that the motion

to dismiss (doc. 32) is due to be **GRANTED.**

The court shall so do by Separate Order.

**DONE** and **ORDERED** this 20th day of December 2012.

						_____
						INGE PRYTZ JOHNSON
						U.S. DISTRICT JUDGE