FILED

2012 Dec-20  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

MADISON COUNTY                      )
COMMUNICATIONS DISTRICT,
                                    )
          Plaintiff,
                                    )          CV 12-J-1768-NE
vs.
                                    )
CENTURYLINK, INC., et al.,
                                    )
          Defendants.

## MEMORANDUM OPINION

Pending before the court is defendant CenturyLink, Inc.'s (CenturyLink) motion to dismiss for lack of personal jurisdiction and brief in support (doc. 29), plaintiff Madison County Communications District's (MCCD) opposition thereto (doc. 42 & 43), and defendant's reply (doc. 50).  Also pending is plaintiff's motion to strike (doc. 41) and CenturyLink's response thereto (doc. 49).  Having considered the motion, response, reply, and all other pleadings filed to date, the court finds as follows:

## STANDARD OF REVIEW

When considering the issue of personal jurisdiction, the Court conducts a two-step inquiry that involves a determination of: (1) whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute; and (2) whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum

contacts with the forum state and that the exercise of jurisdiction not offend traditional notions of fair play and substantial justice. *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citations omitted).  Here, the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible. *Id.* General jurisdiction over the defendant arises if the defendant has continuous and systematic contacts with the forum. Specific jurisdiction requires that a defendant's contacts with the forum must satisfy three criteria: (1) they must be related to the plaintiff's cause of action or have given rise to it; (2) they must involve some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum; and (3) they must be such that the defendant should reasonably anticipate being haled into court there. *Sloss*, 488 F.3d at 925 & n.3.

When a defendant makes a Rule 12(b)(2), Fed. R. Civ. P. motion to dismiss for lack of personal jurisdiction, the following principles apply:

> The court must accept as true all the allegations of the plaintiff's complaint, except to the extent that the defendant presents evidence to contradict those allegations. If that occurs, then the burden shifts back to plaintiffs to "produce evidence supporting personal jurisdiction." When the parties present conflicting evidence, the court must "construe all reasonable inferences in favor of the plaintiff."

*Molex Co., LLC v. Andress*, ___ F.Supp.2d ___,___, 2012 WL 3505584, *5 (N.D.

2

Ala. 2012) (quoting *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir.2002)).  The plaintiff opposing such a motion to dismiss does not have to prevail by a preponderance of the evidence, but is only required to "produce [e]nough evidence to withstand a motion for directed verdict." *Id.*  When evaluating a motion for judgment as a matter of law, courts in the Eleventh Circuit consider "whether such sufficient conflicts exists [sic] in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor of one side that that party is entitled to succeed in his or her position as a matter of law ... look[ing] at the evidence in the light most favorable to the non-moving party ...."  *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000) (citation omitted).  "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."  *Meier ex rel. Meier v. Sun International Hotels*, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

## STATEMENT OF FACTS

CenturyLink, Inc. is a Louisiana corporation with its principal place of business in Monroe, Louisiana. (doc. 29-1 , ¶ 3.) CenturyLink, Inc., a publicly traded company,

is a holding company with an ownership interest in approximately 271 separate companies throughout the United States and internationally. (*Id.* ¶¶ 4-5.). CenturyLink, Inc. is in the business of acquiring and investing in a diverse range of companies with the goal of earning returns for its shareholders. (*Id.* ¶ 5.). The 271 separate companies CenturyLink, Inc. owns are engaged in a range of businesses in the communications and technology industries. (*Id.*). In 2011 CenturyLink, Inc. completed an acquisition of Qwest Corporation. (*Id.* ¶ 6.).

## I. Plaintiff's Motion to Strike

Pursuant to this Court's Order, the parties engaged in limited jurisdictional discovery. That discovery included the deposition of John Felz, who testified as CenturyLink's 30(b)(6) corporate representative. CenturyLink chose to submit a 26 page affidavit from Felz in support of its motion to dismiss (doc. 29-1). Plaintiff asserts that the affidavit is in direct contradiction to the deposition and therefore constitutes a "sham affidavit" under the law of the Eleventh Circuit.

Defendant responds that, during the deposition, MCCD's counsel failed to ask about many of the issues addressed in the Felz Affidavit. In addition, defendant points out that the 30(b)(6) deposition was taken before plaintiff filed its First Amended Complaint (Doc. 24), which for the first time stated the factual bases for plaintiff's assertion of personal jurisdiction over CenturyLink.

It appears that plaintiff's motion relies on the "sham affidavit" rule, a doctrine which derives from Fed. R. Civ. P. 56.  CenturyLink, Inc.'s Rule 12(b)(2) motion to dismiss is not a motion for summary judgment, despite the submission of an affidavit. Fed. R. Civ. P. 12(d); *Melech v. Life Ins. Co. of North America*, 2011 WL 1047716 at * 3 (S.D. Ala. 2011).  However, after review of the deposition (doc. 42-2), affidavit (doc. 29-1), and supplemental affidavit (doc. 49-1), the court finds no discrepancy between Felz's deposition and affidavits that would support application of the "sham affidavit" rule if it were applicable in this case.  *See Camp v. Correctional Medical Services*, 668 F. Supp.2d 1338, 1360 n. 8 (M.D. Ala. 2009) ("An affidavit may only be disregarded as a sham when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.") (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)).  The court finds that the affidavit as supplemented simply clarifies certain areas of Feltz's testimony not covered by his deposition.  *See Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

## II. CenturyLink is not Subject to General Personal Jurisdiction in Alabama

Personal jurisdiction is determined by: (1) the applicable state long-arm statute; and (2) federal due process requirements. *Cronin v. Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir. 1993).  In Alabama, these two analyses are one and the same.  *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000).

Federal due process authorizes the exercise of personal jurisdiction over a non-resident defendant like CenturyLink only when two criteria are met: (1) the nonresident defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Lasalle Bank, N.A. v. Mobile Hotel Properties, LLC*, 274 F. Supp.2d 1293, 1297 (S.D. Ala. 2003).  For the first factor, the nature and quality of the minimum contacts required depends on whether general or specific jurisdiction has been asserted.  *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

"General personal jurisdiction arises from a party's contacts to the forum state that are unrelated to the litigation . . . ."  *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 853 (11th Cir. 1988).  A finding of general jurisdiction

means the defendant is subject to suit in that forum for any conduct.  Thus, to exercise general jurisdiction over a defendant, that defendant must have "continuous and systematic" contacts with the forum state -- a test that is more stringent than the test for specific personal jurisdiction.  *Helicopteros Nacionales de Columbia, SA.* v. *Hall*, 466 U.S. 408, 414-16 (1984).

For general jurisdiction, the defendant's conduct in the forum must be substantial in nature, not sporadic or attenuated.  *Consolidated Development Corp.*, 216 F.3d at 1293. For example, a defendant will not subject itself to general personal jurisdiction by "occasionally soliciting business" in the forum, *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010), or by appointing an agent within the forum for service of process, *Consolidated Development Corp.*, 216 F.3d at 1293.

In this case, plaintiff has alleged that CenturyLink has sufficient direct contacts with the state of Alabama for the court to exercise general personal jurisdiction. Specifically, plaintiff alleges that: 911 remittance forms or ACH funds transfer forms sent to the MCCD have referenced CenturyLink on the "from" line; CenturyLink files a consolidated tax return in Alabama; CenturyLink has made filings with the Alabama Public Service Commission (PSC); CenturyLink has a public website; Centurylink has trademarks in use in Alabama; and Centurylink has litigated in Alabama courts.

### A. CenturyLink's Periodic Filings with the Alabama PSC

Plaintiff alleges that CenturyLink makes periodic filings with the Alabama PSC.  However, CenturyLink does not hold a certificate from the Alabama PSC or any other state public utility commission authorizing it to provide any kind of product or service, and has never applied for such a certificate. (doc. 29-1 , ¶ 13.). CenturyLink and its certificated Alabama subsidiaries have jointly sent a total of six letters to the Alabama PSC over the past five years in connection with various corporate acquisitions. (*Id.* ¶ 40.).  These letters notified the PSC of the transfers of corporate ownership and the new d/b/a or fictitious business name to be used by the certificated subsidiaries following such a transfer.  (*Id.*).  The Alabama PSC requires filings to be made following a change in corporate ownership and resulting d/b/a.  *See* APSC Rule T- 13(B).  These six joint letters CenturyLink was required to submit to the PSC over the span of five years are certainly not the type of "general business contacts" that are so "continuous and systematic" as to render CenturyLink "essentially at home" in the state of Alabama. *See Goodyear Dunlop Tires v. Brown,* 131 S. Ct. 2846, 2853-54 (2011).

### B. CenturyLink's Filings with the FCC

Plaintiff next points to forms CenturyLink files with the Federal Communications Commission ("FCC"). (doc. 24 ¶ 7.).  Defendant states that plaintiff

is referencing the FCC's Form 477, a yearly form which the FCC uses to compile information on broadband infrastructure and competition in local telecommunications services. *See* Instructions for Local Telephone Competition and Broadband Reporting (FCC Form 477), http://transition.fcc.gov/form477/inst.htm. Each entity with a 10% or greater ownership interest in any company providing the described services must file a separate yearly form for each state with information on the number of customers and connections served. *Id.* The FCC instructions specifically require that one filing be made in each state by the holding company parent– in this case CenturyLink. *Id.* The court finds that CenturyLink's compliance with this FCC reporting requirement provides no relevant evidence of personal jurisdiction in Alabama.

### C. CenturyLink's Consolidated Alabama Tax Returns.

Plaintiff also alleges that CenturyLink's filing of income and business tax returns in Alabama provides evidence of minimum contacts. (doc. 24 ¶ 7.). CenturyLink has presented evidence that it does not conduct any business in Alabama and does not earn any income in Alabama. (doc 29, ex. 1 ¶ 43.) CenturyLink is the tax filer on behalf of the separate subsidiaries doing business in Alabama. (*Id.* ¶¶ 41-43.). Holding company parent corporations like CenturyLink are required by SEC rules to report financial performance on a consolidated basis, and are also permitted

to file consolidated federal income tax returns, which in most states allows the state income tax return be filed on a consolidated basis as well. (*Id.* ¶ 41.); *see* Ala. Code § 40-18-39(c)(1) ("An Alabama affiliated group filing or required to file a federal consolidated income tax return may elect to file an Alabama consolidated return for the same taxable year.").  In addition, some of the 271 subsidiaries of CenturyLink are single member limited liability corporations. (*Id.* ¶ 42.)  Under Alabama law, tax returns for single member LLCs must be signed in the name of the parent or member entity.  *See* Ala. Admin. Code r. 810-3-28-.01(f) ("The [LLC] return must be signed by one partner or member").  Plaintiff has not presented any evidence showing that CenturyLink ever paid the income or business taxes for any of its subsidiaries or refuting that each subsidiary is responsible for and pays any taxes due out of funds belonging to that subsidiary. (doc 29, ex. 1 ¶ 44.).

The court finds that the Alabama tax returns do not provide a basis for personal jurisdiction over CenturyLink.  *See Zimmerman v. JWCF, LP*, 2011 WL 4501412 at *8 (N.D. Ill. 2011) ("[T]he Court is not aware of, any authority holding that personal jurisdiction over a foreign parent is appropriate simply because the parent filed a tax return in the state where its subsidiary does business.").  Nor does the filing of consolidated tax returns provide a basis to pierce the corporate veil.  *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (filing consolidated

10

tax return "hardly demonstrates dominion" required to pierce the corporate veil);

*Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (refusing to pierce

the corporate veil where parent filed consolidated tax return).

### D. CenturyLink's Participation in Previous Alabama Litigation.

Plaintiff alleges that CenturyLink (or its predecessor CenturyTel, Inc.)

participated as a defendant in three prior unrelated Alabama cases (2003, 2007, and

2010), and that this provides some basis for personal jurisdiction. (doc. 24 ¶ 7.).  This

argument has been repeatedly rejected.  *See e.g., Mallinckrodt Medical, Inc. v. Sonus*

*Pharmaceuticals, Inc.,* 989 F. Supp. 265, 271 (D.D.C. 1998) ("[t]he initiation of the

[prior] action neither implies consent to be sued, nor does it in and of itself constitute

doing business in the jurisdiction where the suit was brought.").  A defendant's

strategic determination whether to contest personal jurisdiction is impacted by a

multitude of factors, including but not limited to, the type of claims asserted, the

presence of other defenses or defendants, and the costs of defense.  Obvious policy

and fairness concerns dictate that a defendant not be forced to litigate personal

jurisdiction in every case, or worse, forego asserting valid claims in the forum state

lest its actions operate as a permanent bar to contesting personal jurisdiction in the

future.  For these reasons, a defendant's decision not to raise jurisdiction in one

matter, or even a decision to file suit in the forum state, does not waive its right to

object to jurisdiction in future matters. *Guzman v. Mem'l Hermann Hosp. Sys.*, 2008 WL 5273713, at *13 (S.D. Tex. 2008) ("[b]y submitting to jurisdiction in one case, a party does not thereby consent to jurisdiction for all future suits in that forum, even if they are related."); *Rozenblat v. Sandia Corp.*, 2005 WL 1126879 at *2 (N.D. Ill. 2005) (same); *Frosty Bites, Inc. v. Dippin' Dots, Inc*., 2002 WL 1359704, at *5 (N.D. Tex. 2002) (same); *Cooper v. McDermott Intern., Inc.,* 62 F.3d 395 at *3 (5th Cir. 1995) (same).   In fact, a defendant's participation in previous cases is wholly irrelevant to the personal jurisdiction analysis. *Cooper,* 62 F.3d at 395; *Dalton,* 897 F.2d at 1363 n.4 (5th Cir. 1990) (finding parent's submission of jurisdiction in prior cases has no effect on later objection to personal jurisdiction). The court, therefore, finds that Plaintiff's allegations regarding prior Alabama litigation are irrelevant to the issue of whether CenturyLink is subject to personal jurisdiction in this case.

### E. CenturyLink's Trademark Applications

Plaintiff points to the fact that CenturyLink submitted trademark applications to the U.S. Patent and Trademark Office (USPTO) as evidencing CenturyLink's Alabama contacts. (doc. 24 ¶ 7.).  The CenturyLink™ name and logo are registered trademarks with the USPTO. (doc. 29-1  ¶ 50.).  There are 16 currently registered marks for the use of the CenturyLink name and/or logo in various specific ways, 14 of which are held by CenturyLink Intellectual Property, LLC, an indirect subsidiary

12

company of CenturyLink, and the remaining 2 registered marks are held by CenturyLink (*Id.* ¶ 51.). All of the registered marks are used by various subsidiaries of CenturyLink pursuant to an implied license from the holder. (*Id.* ¶ 50.).  This is expressly permitted by the USPTO and, in fact, is the typical structure, as recognized by a leading treatise on the subject:

> [t]he PTO takes the position that ownership of marks between a parent and its subsidiary is a matter of agreement between them. In the vast majority of cases, that means that the parent corporation will be the owner of the registrations of all marks used by subsidiaries.

*McCarthy on Trademarks and Unfair Competition,* § 16.4 (4th ed.) (2012); *Von Gabe v. Sprint PCS,* 312 F. Supp.2d 1285, 1301 (S.D. Cal. 2003) (describing similar structure of Sprint).   In addition to the 16 currently registered trademarks, CenturyLink apparently has filed trademark applications with the USPTO to register additional specific uses of the CenturyLink™ name or logo, principally in promotional items such as key fobs, notepads, laptop bags, umbrellas, golf bags, water bottles, etc. (doc. 29-1  ¶ 52.) All but 2 of the pending trademark applications were filed based on an intent to use the marks in the future. (*Id.* ¶ 52.)

The fact that CenturyLink currently holds some, but not all, of the registered trademarks used by its subsidiaries and applied for additional marks that may be used by its subsidiaries in the future, is not evidence of minimum contacts with Alabama,

nor does it provide any evidence of alter ego or disregard of the corporate form. *See,*

*e.g., Que Sera Promotions, Inc. v. Poughkeepsie Ford, Inc.,* 2005 WL 2896703 at *5

(N.D. Ind. 2005); *In re Ski Train Fire,* 230 F. Supp. 2d 403, 411 (S.D.N.Y. 2002);

*Phonometrics v. Northern Telecom,* 133 F.3d 1459, 1461 (Fed. Cir. 1998).

### F. CenturyLink's Content on the centurylink.com Website

Plaintiff's allegations concerning the centurylink.com website are similarly

lacking in jurisdictional significance.  Contrary to the statements in plaintiff's First

Amended Complaint, CenturyLink presented evidence that it does not control or

operate the centurylink.com website. (Doc. 29-1 ¶ 37.).  The centurylink.com website

is maintained and operated by CenturyTel Service Group, LLC, as part of the general

contract corporate administrative services provided for a fee to CenturyLink and some

of the various 271 subsidiaries. (*Id.*).  The CenturyLink portion of the

centurylink.com website is passive only, *i.e.,* it provides general corporate

information, company history, links to SEC filings, press releases, etc. (*Id.* ¶ 38.)  No

portion of the website devoted to CenturyLink is interactive, and CenturyLink does

not conduct any business through its website, in Alabama or elsewhere. (*Id.*)

This type of passive, informational corporate website does not provide grounds

for the exercise of personal jurisdiction.  *Fraser v. Smith,* 594 F.3d 842, 847 (11th.

Cir. 2010) ("the mere existence of a website that is visible in a forum and that gives

information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum"); *see also Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 2012 WL 3113136 at *8 (S.D. Ala. 2012) (same); *Matthews v. Brookstone Stores, Inc.,* 469 F. Supp.2d 1056, 1064 (S.D. Ala. 2007) (same) (collecting cases).

All of the interactive features on the centurylink.com website are provided by the separate subsidiaries of CenturyLink.  Some, but not all, of the subsidiaries provide some interactive features to customers, others use separate websites, and some do not interact with their customers at all online.  (doc. 29-1  ¶ 39.)  None of this subsidiary website activity has any relevance to the minimum contacts analysis. *Consolidated Development Corp.*, 216 F.3d at 1293 (activities of subsidiaries within the forum state are not imputed to the parent); *In re Nazi Era Cases,* 320 F. Supp. 2d 204, 220 (D.N.J. 2004) (parent's website, which "serves as a shopping portal that allows customers to transact business with and purchase goods from [the parent's] subsidiaries," did not establish personal jurisdiction).

### III. CenturyLink is not Subject to Specific Personal Jurisdiction in Alabama

Specific jurisdiction permits a non-resident defendant to be sued only "in a suit arising out of or related to the defendant's contacts with the forum."  *Helicopteros*

*Nacionales de Columbia, SA.,* 466 U.S. at 414.  For specific jurisdiction contacts, courts look to three factors: (1) the relationship between the contacts and the cause of action, (2) the degree to which the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum," and (3) the degree to which the defendant could "reasonably anticipate being haled into court" in the jurisdiction. *Ruiz de Molina,* 207 F.3d at 1355-57.  If the court finds sufficient minimum contacts, it must then examine a fourth factor, whether the exercise of personal jurisdiction would offend the "traditional conception of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).  All four factors must be satisfied for specific personal jurisdiction to exist.

In this case, specific jurisdiction is not present because CenturyLink "has done nothing which links it to the facts of this suit."  *Portera v. Winn Dixie of Montgomery, Inc.,* 996 F. Supp. 1418, 1423 (M.D. Ala. 1998).  CenturyLink has no involvement with 911 fees:

- CenturyLink does not exercise any control or discretion with regard to the billing, collection, reporting, remittance, or auditing of 911 fees in Alabama or any other state.  (doc. 29-1 ¶ 22.)

- The 911 fees are collected and remitted by the separate subsidiary telephone companies providing telephone service within the district.

16

(*Id.* ¶ 22.)

• All 911 fees to Plaintiff are remitted exclusively from the funds of the providing subsidiary telephone company. (*Id.* ¶ 25.)

• Payments of 911 fees are never made from funds belonging to CenturyLink or CenturyTel Service Group, LLC. (*Id.* ¶ 25.)

MCCD alleges that some 911 fee remittance forms or ACH funds transfer forms sent to MCCD in the past have referenced CenturyLink, Inc. or its predecessor CenturyTel, Inc. in the "from" line. (doc. 24 ¶ 7.). MCCD noted that 3 or 4 of those forms submitted to MCCD within the past year referenced "CenturyLink, Inc." in the "from" line, rather than CenturyTel Acquisition LLC or Qwest Communications Company, LLC. (doc. 29-1 ¶¶ 26-29.) These appear to be nothing more than typographical errors made by the accounting clerks that prepared the forms. (*Id.* ¶ 28.) All of the remaining forms to MCCD for the past two years listed the service provider, CenturyTel Acquisition LLC in the "from" line. (*Id.*) The few erroneous forms raised by MCCD are insufficient grounds to subject CenturyLink to specific personal jurisdiction in this Court.

Plaintiff has not shown that CenturyLink has purposefully conducted any activities in Alabama, much less the 911 surcharge activities out of which plaintiff's

claims arise.[1]  The final factor is unsatisfied because it does not comport with "fair play and substantial justice" to hale a defendant into court in a state where it has no presence and does not conduct business, to adjudicate claims for 911 surcharge duties it does not owe, arising out of services it does not offer. *See Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985).

## IV. Plaintiff has not Met the Burden Required to Pierce the Corporate Veil

A plaintiff that tries to pierce the corporate veil under Alabama law is subject to a particularly demanding challenge.  The plaintiff must prove, among other things, that the parent corporation has "complete control and domination" of the subsidiary's finances, policy, and business practices so that the subsidiary "has no separate mind, will, or existence of its own." *Messick v. Moring*, 514 So. 2d 892, 894 (Ala. 1987). Leaving little doubt as to the extreme and total domination that must exist, courts have noted that piercing the corporate veil is inappropriate when the subsidiary has "preserved some semblance of independence" from the parent. *Agostinelli v. Fifth Third Bank*, 2011 WL 2119099, *6 (S.D. Ala. 2011).

Plaintiff does not come close to meeting this burden. To show the required

---

[1] Plaintiff also asserts that CenturyLink's periodic filings with the Alabama PSC establish grounds for asserting specific personal jurisdiction.  As previously discussed, these filings constitute six letters over a period of five years to inform the Alabama PSC about changes in corporate ownership of subsidiaries.  These letters are insufficient to establish specific personal jurisdiction.

"complete control and domination," Plaintiff relies upon two things: (1) the fact there are overlapping officers between CenturyLink and some, but not all, of its 271 subsidiaries (MCCD ignores CenturyLink's 12 independent directors on the 13-member board); and (2) the fact some of the subsidiaries are service companies which contract with other subsidiaries to provide general corporate and administrative services, through written agreements, cost allocations, and strict observance of corporate separateness.  Both of these factors are recognized as routine, appropriate business practices that will exist anytime a parent corporation has a wholly-owned subsidiary, and thus they are woefully insufficient to overcome the well-settled requirement that courts must be "highly deferential" to the corporate form.  *See, e.g., Keenan v. Matchmaker Intern.,* 1999 WL 33590522 at *5 (S.D. Ala. 1999); *United States v. Bestfoods,* 524 U.S. 51, 69 (1998); *In re Enterprise Rent-A-Car*, 735 F. Supp.2d 277, 324 (W.D. Penn. 2010); *Dalton v. R & W Marine*, 897 F.2d 1359, 1363 (5th Cir. 1990).

MCCD has not demonstrated that CenturyLink has control whatsoever over the day-to-day operations of its Alabama subsidiaries.  Plaintiff relies on the assumption that because there is an overlap of officers, control should be presumed.  The Supreme Court has rejected this very argument, noting "the well established principle of corporate law that directors and officers holding positions with a parent and its

19

subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Bestfoods,* 524 U.S. at 69.  Plaintiff totally ignores the evidence presented that CenturyLink does not control the day to day operations of any of its 271 subsidiaries, but rather employs a structure and "general philosophy to equip and empower employees at the local level to meet the needs of customers in their respective markets, and place operational and customer service decision-making as close as possible to the customer," a practice that has been acknowledged and approved by public utility commissions in multiple states.  (doc. 29-1 ¶ 56; Disc. Resp., Doc. 42-8, Int. 13, p. 17; Felz Depo., Doc. 42-2, pp. 59-66.)

### B. *Hill v. Fairfield Nursing* is Distinguishable

Plaintiff points to *Hill v. Fairfield Nursing and Rehabilitation Center, LLC* 2012 WL 5077166 (Ala. 2012) to assert that this court should pierce the corporate veil to find personal jurisdiction over CenturyLink.   *Hill* involved a medical malpractice claim against a nursing home arising out of a former resident's injury. *Id.* at *1.  The plaintiff sued not only the nursing facility itself, but also a host of other, related companies under an alter ego theory.  *Id.*  Evidence showed that the nursing facility itself owned no real property, owned no significant personal property, carried minimal liability insurance, and was undercapitalized with the most recent balance sheet showing a loss of nearly $600,000 for the year.  *Id.* at *10.  The parent

companies and the nursing facility subsidiary were created within days of each other, and shortly thereafter a related company was formed to micromanage the day-to-day business of the nursing home company.  *Id.* at *11.

Contrary to plaintiff's contentions, the facts in *Hill* and those in the present case are markedly different.   In this case, there are no allegations that any CenturyLink subsidiaries are undercapitalized in any way or do not own property. The facts demonstrate that the two Madison County telephone companies (CenturyTel Acquisition LLC and Qwest Communications Company, LLC) have no corporate debt, have positive cash positions, and are financially sound.  (doc. 29-1, ¶ 17.)  *Hill* is, therefore, inapplicable.

### C. *Directory Dividends* **is not applicable**

MCCD next urges the court to adopt the reasoning in *Directory Dividends, Inc. v. SBC Communications*, 2003 WL 21961448 (E.D. Penn. 2003).   The court in *Directory Dividends*, however, applied a different standard to pierce the corporate veil than the standard required under Alabama law.  As opposed to the "complete control and domination" and required lack of any "separate mind, will, or existence" that must be applied to this case under Alabama law, the court in *Directory Dividends* held the plaintiff need only show "'[t]he degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship.'"

*Directory Dividends*, 2003 WL 21961448, *3 (quoting *In re Latex Gloves Products Liability Litig.*, 2001 WL 964105 (E.D. Pa. 2001)).   Because the "greater than normally associated" test is such a drastically different standard than the "complete control and domination" requirements set forth in Alabama law, *Direct Dividends* is not applicable.

To the extent that CenturyLink, as plaintiff alleges, may from time to time collectively refer to all of its subsidiaries, either on the centurylink.com website or in press releases, that is nothing more than expected and typical brand marketing, as courts have recognized in refusing to extend *Directory Dividends* even to other telecommunications entities:

> Plaintiff also relies on [*Directory Dividends*] for the proposition that defendant and its subsidiaries operate as one large company, not separate entities. Plaintiff's reliance on *Directory Dividends* is misplaced. That court, in finding personal jurisdiction over SBC based on the citizenship of a few of its subsidiaries, relied on SBC's own press release declaring, among other statements, that it was transforming itself from separate, regional companies into a company with a single identity. No such press release or other declaration from defendant is in the record here, and the . . . statements from defendant's website are distinguishable from the press release quoted in *Directory Dividends*.

*Transcom Enhanced Services, Inc. v. AT&T Inc.*, 2010 WL 3186494, *4 (N.D. Tex. 2010) (int. cit. omit.); *see also In re Enterprise Rent-A-Car*, 735 F. Supp. 2d 277, 323-24 (W.D. Penn. 2010) (noting that common marketing image and joint use of

trademarked logos does not support finding of alter ego).

### D. *Southern New England Telephone* is Distinguishable

In its Response, MCCD claims that the *Southern New England Telephone Co. v. Global NAPs Inc.* 624 F.3d 123, 131 (2d Cir. 2010) (hereinafter "*SNET*") court summarized "facts and allegations strikingly similar to those in this case" before finding personal jurisdiction under an alter ego theory. (doc. 42, p. 30.) It is apparent, however, that several distinctions separate *SNET* from the current case. For example, the *SNET* plaintiff presented declarations and deposition testimony supporting its allegation that the related defendant corporations had stripped the subservient company of all assets and revenue so that it would be incapable of meeting the contractual obligations it had with the plaintiff. *SNET*, 624 F.3d at 138-39. Here, MCCD has not argued that CenturyLink has undercapitalized any of its subsidiaries, much less the ones operating in Alabama.

In *SNET*, the plaintiff established that the companies transferred customers, revenues, and assets amongst themselves without documentation and had also commingled funds that were used to pay the debts and expenses of each entity indiscriminately. *Id.* at 131. MCCD tries to establish commingling by relying exclusively on the use of a centralized bank account, an argument that has been repeatedly rejected. *See, e.g., In re Hillsborough Holdings Corp.*, 176 B.R. 223, 252-

23

53 (M.D. Fla. 1994) (noting that common bank account with separate accounting records is not commingling of funds and provides no support for finding alter ego); *Judson Atkinson Candies v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 380 (7th Cir. 2008) (finding no proof of commingling from use of a common bank account where separate accounting records were kept and plaintiff could not show that funds from one entity were ever used to pay expenses of other entities); *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1459 (2d Cir. 1995) (finding no commingling of funds despite common bank account where  "[a]t all times, a strict accounting is kept of each subsidiary's funds" and noting "[c]ourts have generally declined to find alter ego liability based on a parent corporation's use of a [common bank account] cash management system.").  Here, there is no allegation that the proper documentation is lacking, that funds are spent indiscriminately, or that anything improper or out of the ordinary has occurred. In fact, the only similarity between CenturyLink and the *SNET* defendants appears to be a sharing of officers and directors–something that has repeatedly been labeled by courts as fully expected in a parent-subsidiary relationship. *See*, *e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (noting that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary"); *AAA Cooper Transp.*, 2012 WL 847470, *7 (M.D. Ala. 2012) (finding that mere overlap in management is not sufficient to pierce the corporate veil

and impute subsidiary's contacts to parent for personal jurisdiction purposes).  The

court finds that the *SNET* decision provides no support for MCCD's argument.

### E. Plaintiff's Agency Theory Fails.

In a final attempt to find some basis for jurisdiction over CenturyLink, MCCD

claims that the Alabama subsidiaries "necessarily act as agents of [CenturyLink]"

and, under this theory of agency, personal jurisdiction is either proper or a question

of fact to be resolved at trial.  (doc. 42, p. 43.)  What MCCD ignores, however, are

the decisions from courts across the country–including courts within the Eleventh

Circuit–that unequivocally reject the agency theory of jurisdiction where the parent

is a holding company like CenturyLink.  For example, in *Vogt v. Greenmarine*

*Holding, LLC*, the court first denied the plaintiff's alter ego theory and then

summarily disposed of agency as a method for obtaining jurisdiction over the parent

holding company:

> Plaintiffs also contend that the court can exercise personal jurisdiction
> over Defendants on a theory of agency. The court finds, however, that
> agency is not the appropriate analysis when considering the relationship
> of a holding company and its subsidiary. . . .[H]olding companies are
> investment companies for the purpose of diversifying risk.  As such,
> they do not conduct the same business as their subsidiaries and their
> relationship cannot be viewed as one of agency.

2002 WL 534542, *7 (N.D. Ga. 2002); *Melech v. Life Ins. Co. of North America*,

2011 WL 1047716, *7 (S.D. Ala. 2011) ("holding companies do not conduct the same

business as their subsidiaries, but rather are investment companies."); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 929 (9th Cir. 2001) ("in the case of a holding company the parent could simply hold another type of subsidiary, in which case imputing the subsidiaries' jurisdictional contacts to the parent would be improper."). As a result, MCCD's theory of agency must fail.

Plaintiff has failed to establish that this court has personal jurisdiction over CenturyLink,Inc.  It is therefore ORDERED that said defendant's motion to dismiss shall be GRANTED.  The court shall do so by separate order.

**DONE** and **ORDERED** this 20th day of December 2012.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE